UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Minnesota R-80 Medical
Transportation Coalition, and
Minnesota Ambulance Association,

              Plaintiffs,

v.

Commissioner of the Minnesota Department
of Human Services, Emily Johnson Piper,
in her official capacity; and Secretary of the
United States Department of Health and
Human Services, Don Wright,
in his official capacity,

              Defendants.

Civil No. 17-4539 (DWF/LIB)

MEMORANDUM
OPINION AND ORDER

---

Anthony D. Johnson, Esq., Christopher J. Heinze, Esq., and Kirsten J. Libby, Esq., Libby Law Office, P.A., counsel for Plaintiffs.

James H. Clark III, Assistant Attorney General, Minnesota Attorney General's Office, counsel for Defendant Emily Johnson Piper.

David W. Fuller, Assistant United States Attorney, United States Attorney's Office, counsel for Defendant Don Wright.

---

**INTRODUCTION**

This matter is before the Court on Motions to Dismiss brought by Defendants Emily Johnson Piper, Commissioner of the Minnesota Department of Human Services, and Don Wright, Secretary of the United States Department of Health and Human

Services. (Doc. Nos. 15, 20.) For the reasons set forth below, the Court grants the Commissioner's motion and dismisses this case.

## BACKGROUND

### I. The Parties

Plaintiffs, Minnesota R-80 Medical Coalition ("R-80") and Minnesota Ambulance Association ("MAA"), are organizations whose members provide non-emergency medical transportation ("NEMT") to Medicaid recipients throughout the State of Minnesota. (Doc. No. 14 ("Am. Compl.") ¶¶ 1, 2, 14.) Plaintiffs assert claims against Emily Johnson Piper (the "Commissioner") in her official capacity as Commissioner of the Minnesota Department of Human Services ("DHS") and Don Wright (the "Secretary") in his official capacity as Secretary of the U.S. Department of Health and Human Services ("HHS").[1] (*See id.* ¶¶ 3, 7.) R-80's organizational "purpose is to advocate for its members by promoting and strengthening transportation medical services by advancing policy and practice in the State of Minnesota." (*Id.* ¶ 28.) Similarly, "MAA is an organization with numerous medical transportation members that advocates for its members by promoting and strengthening transportation medical services by advancing policy and practice in the State of Minnesota." (*Id.* ¶ 34.) Both Plaintiff

---

[1] The parties' briefing and the Court's independent review of the U.S. Department of Health and Human Services website indicates that Don Wright no longer serves as Secretary of this agency. (*See* Doc. No. 17 at 2 n.2; Doc. No. 23 at 1 n.1; Doc. No. 25 at 1; *see also* U.S. Department of Health and Human Services, HHS Leadership, https://www.hhs.gov/about/leadership/index.html (last visited Aug. 20, 2018).) Pursuant to Federal Rule of Civil Procedure 25(d), Don Wright's "successor is automatically substituted as a party" in his absence. *See* Fed. R. Civ. P. 25(d). For simplicity, the Court shall refer to this Defendant as "the Secretary" throughout this order.

organizations are members of the state's NEMT Advisory Committee. (*Id.* ¶¶ 29, 37.) In this capacity, Plaintiffs "advise[] [the Commissioner] on the administration of nonemergency medical transportation covered under Medical Assistance [("MA")]."[2] (*Id.* ¶¶ 30, 39.)

## II. The Commissioner's Delegation of NEMT Administration

According to Plaintiffs, Minnesota law "requires [the Commissioner] and DHS to 'implement a single administrative structure and delivery system for [NEMT].'" (*Id.* ¶ 63 (quoting Minn. Stat. § 256B.0625, subd. 18e); *see also id.* ¶¶ 74-76.) Plaintiffs contend that "[t]his single administrative structure ensures that [NEMT] claims are being administered consistently and in a uniform manner." (*Id.* ¶ 77.) Plaintiffs also assert that Minnesota law obligates DHS to "administer and reimburse [NEMT] providers for services provided . . . unless and until [the Commissioner] has 'developed, made available, and funded the single administrative structure.'" (*Id.* ¶ 80 (quoting Minn. Stat. § 256B.0625, subd. 17(j)).) Specifically, Plaintiffs contend that local counties should be permitted to administer and reimburse NEMT services "[o]nly once that single administrative structure and delivery system is developed, available, and funded by [the Commissioner] and DHS." (*Id.* ¶ 83.) Plaintiffs allege that the Commissioner has improperly failed to develop a statewide administrative system for coordinating NEMT and has delegated responsibility for approving payments to Minnesota counties as well as

---

[2] "Medical Assistance" is the state of Minnesota's Medicaid program. (*See* Doc. No. 14 ("Am. Compl.") ¶ 5.)

3

a private brokerage firm located in Missouri known as Medical Transportation Management, Inc. ("MTM").³ (*See id.* ¶¶ 87-90, 130, 132, 135-37, 150.) According to Plaintiffs, the decision "to relegate all of DHS' duties concerning the administration of [NEMT] services to the 87 Minnesota counties" took place following a 5-4 vote at a NEMT Advisory Committee meeting inappropriately convened in the absence of a quorum and with the improper participation of DHS employees. (*Id.* ¶¶ 144-50.) Plaintiffs also generally assert that the Commissioner unlawfully "restructured reimbursement payments without advice and counsel from the Nonemergency Medical Transportation Committee." (*Id.* ¶ 232.)

Plaintiffs allege that a number of "inconsistencies" have resulted from the delegation of oversight to Minnesota's 87 counties. (*Id.* ¶ 92.) In particular, Plaintiffs discuss "a number of varying protocols and administrative procedures for the administration and reimbursement of [NEMT]." (*Id.* ¶ 94.) Examples include differences in whether a county utilizes a web-based or paper-based claim submission process, varying lengths of time to obtain reimbursement, and differing information provided along with reimbursements. (*See id.* ¶¶ 95-99.) Plaintiffs allege that slower reimbursement rates and varying reimbursement protocols impose an undue burden on

---

³ According to the Complaint, Medicaid covers seven separate "Modes" of transportation, and only Modes 1-4 have thus far been delegated to Minnesota counties for administration. (*Id.* ¶¶ 79, 92-93.) The allegations in the Complaint center primarily on the delegation of Mode 4 administration to Minnesota counties. The distinctions between the various modes, however, are irrelevant to the Court's analysis of the pending motions, and the Court omits reference to the specific modes at issue for simplicity throughout this order.

4

NEMT providers. (*Id.* ¶ 100.) Thus, Plaintiffs explain, some NEMT providers have discontinued providing certain services in counties with complicated and slow reimbursement processes, leaving Medicaid "recipients in those counties with little to no options for needed [NEMT] services." (*Id.* ¶ 101.) Plaintiffs also allege various inconsistences relating to "determinations of level of need for MA recipients," the "requirements for [NEMT] providers to be reimbursed for services provided," and which entity actually administers reimbursements in each county. (*Id.* ¶¶ 102-21.) Plaintiffs particularly allege that the varying reimbursement requirements have placed an undue burden on NEMT providers and Medicaid recipients. (*Id.* ¶ 117.) In addition, Plaintiffs contend that the Commissioner's delegation of administration over NEMT has created confusion over which counties should be responsible for claims, resulting in some "uncollectable claim[s] for services provided" and an undue burden on NEMT providers. (*Id.* ¶¶ 122-28.)

In sum, Plaintiffs assert that "[b]ecause of the autonomy exercised by Minnesota's 87 counties and MTM, [NEMT] claims under Medicaid are often not efficient and are rarely uniform," resulting in an undue burden on NEMT providers. (*Id.* ¶ 140.) According to the Complaint, "Plaintiffs will continue to suffer ongoing damages if the 87 Minnesota counties are allowed to continue to serve as the single administrative agency" with respect to NEMT services. (*See id.* ¶ 93.)

In conjunction with their brief in opposition to Defendants' Motions to Dismiss, Plaintiffs submitted the Affidavit of Jeffrey R. Nustad, the owner of an NEMT provider and one of R-80's members. (Doc. No. 26 ("Nustad Aff.") ¶¶ 1-2; *see also* Am. Compl.

¶ 23.) According to Nustad, DHS's delegation of NEMT administration "has had a substantial impact on [his] business" in light of counties' inability to efficiently and knowledgeably manage claims for reimbursement. (*See id.* ¶ 5.) Nustad also asserts that the delegation of administration has led him to conclude that "my company can no longer reasonably provide [NEMT] services" in two specific counties. (*Id.* ¶ 8.) Nustad avers that "[m]y colleagues in the NEMT industry have had similar experiences and have stopped servicing [NEMT] recipients in certain counties," negatively impacting Medicaid recipients' access to transportation services. (*Id.* ¶ 11.)

### III. Misappropriation of Funds and Threatened Fraud Investigations

Plaintiffs also allege that DHS reimbursed NEMT providers for several months after those duties were delegated to counties and thereafter recouped reimbursements DHS had approved. (Am. Compl. ¶¶ 152-63.) Plaintiffs further allege that DHS directed counties that they could decline to reimburse the NEMT providers for these previously-approved services and threatened fraud investigations against providers who sought to recover their recouped funds. (*Id.* ¶¶ 161, 164.) Thus, Plaintiffs assert that "[d]espite [providers] being entitled to reimbursement, DHS has recouped these monies from the [NEMT] service providers and retained them illegally, violating state and federal law." (*Id.* ¶ 163.) Plaintiffs contend that DHS retains possession of the misappropriated funds and that the Commissioner "should be required to follow the law such that no further misappropriations occur." (*Id.* ¶¶ 166-67.) Relatedly, Plaintiffs assert that DHS has threatened to initiate fraud investigations against NEMT providers

who choose to discontinue providing NEMT services in counties which have refused to provide reimbursement for the recouped funds. (*Id.* ¶¶ 168-70.)

## IV. Plaintiffs' Amended Complaint

Plaintiffs allege that DHS's actions constitute violations of Minnesota law and federal Medicaid law as outlined in the State's approved Medicaid State Plan. Plaintiffs also allege that the HHS Secretary has unlawfully failed to require DHS to operate its Medicaid program in compliance with federal law. With respect to a number of their claims, Plaintiffs generally assert that Defendants' alleged illegal conduct "constitutes a public wrong injurious to Plaintiffs, all MA recipients, other medical institutions and medical providers in Minnesota, and the public at large." (*Id.* ¶¶ 180-82, 195-197, 206, 214.) Plaintiffs also allege that they "will continue to suffer ongoing damages" as a result of the State Plan's noncompliance with federal law. (*Id.* ¶¶ 183, 198.)

Specifically, Plaintiffs' Amended Complaint asserts the following fourteen claims: (I) Writ of Mandamus for failing to ensure that Minnesota's State Plan complies with 42 U.S.C. § 1396a(a)(19) and 42 U.S.C. § 1396a(a)(30) (against the Secretary); (II) Writ of Mandamus for failing to ensure that Minnesota's State Plan complies with 42 U.S.C. § 1396a(a)(19) and 42 U.S.C. § 1396a(a)(30) (against the Commissioner); (III) Writ of Mandamus for failing to comply with Minn. Stat. § 256B.0625, subd. 18(e); (IV) Writ of Mandamus for permitting counties to administer NEMT prior to creating a single administrative structure as required under Minn. Stat. § 256B.0625, subd. 17(j); (V) Declaratory Judgment that Minnesota's State Plan or its administration fails to comply with 42 U.S.C. § 1396a(a)(19) and 42 U.S.C. § 1396a(a)(30) (against the

Secretary); (VI) Declaratory Judgment that Minnesota's State Plan or its administration fails to comply with 42 U.S.C. § 1396a(a)(19) and 42 U.S.C. § 1396a(a)(30) (against the Commissioner); (VII) Declaratory Judgment that the Commissioner has violated 42 C.F.R. § 447.204; (VIII) Declaratory Judgment that the Commissioner has violated Minn. Stat. § 256B.0625, subd. 18(e); (IX) Declaratory Judgment that the Commissioner has violated Minn. Stat. § 256B.0625, subd. 17(j); (X) Violation of Minn. Stat. § 62J.536 for permitting counties to use non-electronic reimbursement systems for NEMT; (XI) Writ of Mandamus for failing to comply with Minn. Stat. § 256B.04, subd. 14(c); (XII) Declaratory Judgment that the Commissioner has violated Minn. Stat. § 256B.04, subd. 14(c); (XIII) Mishandling and Misappropriation of Medicaid Funds; (XIV) Minnesota Equal Access to Justice Act relief awarding Plaintiffs' costs and fees. (*Id.* ¶¶ 172-282.) Counts I and V are asserted against the Secretary, and the remaining counts are asserted against the Commissioner. (*See id.*)

Plaintiffs seek multiple forms of relief including various writs of mandamus, declaratory judgment, damages exceeding $75,000 and "prospective ongoing damages," costs and attorney fees. (*See id.* at Prayer for Relief.) Specifically, Plaintiffs seek writs of mandamus compelling the Secretary and the Commissioner to ensure that Minnesota's Medicaid State Plan complies with federal law as well as writs of mandamus compelling the Commissioner's compliance with Minnesota laws governing the single administrative NEMT structure. (*Id.* at Prayer for Relief ¶¶ 1-4.) Both Defendants move to dismiss the claims against them. (Doc. Nos. 15, 20.)

## DISCUSSION

**I.  Legal Standard**

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). To survive a motion under Rule 12(b)(1), the party asserting jurisdiction has the burden of proof. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). "Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case." *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990).

A Rule 12(b)(1) motion may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When a defendant brings a facial challenge—that is, even if the allegations were true, they lack an essential element for jurisdiction—a court reviews the pleadings alone and assumes the allegations are true. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *accord Osborn*, 918 F.2d at 729 n.6. In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and weigh the accuracy of the allegations. *Titus*, 4 F.3d at 593; *accord Osborn*, 918 F.2d at 729 n.6.

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v.*

9

*City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II. Standing

"[A] plaintiff seeking relief in federal court must first demonstrate that he has standing to do so, including that he has 'a personal stake in the outcome,' distinct from a 'generally available grievance about government.'" *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) (citations omitted). The purpose of this requirement is to ensure that courts "do not engage in policymaking properly left to elected representatives." *Id.* (citation omitted). To demonstrate standing to invoke federal court jurisdiction under Article III of the Constitution, a plaintiff must establish: "that he '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely

10

to be redressed by a favorable judicial decision.'" *Id.* at 1929 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

The Supreme Court recently affirmed that "injury in fact" is "[f]oremost among these requirements." *Id.* The injury in fact element requires a plaintiff to "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Where a plaintiff seeks injunctive relief, he must adequately establish the threat of such an injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). A "concrete" injury is one that "actually exist[s]," although it may be intangible. *Spokeo*, 136 S. Ct. at 1548-49. While "Congress may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law," a plaintiff does not automatically establish an injury in fact "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549 (quoting *Lujan*, 504 U.S. at 578 (quotations marks and brackets omitted)). "Where . . . a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element," and it is the plaintiff's burden to establish standing. *Id.* at 1547.

"Even in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). "The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Id.* For an organization to

11

establish standing to sue on behalf of its membership, it must establish that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). "[G]eneral and conclusory legal allegations" absent any "facts about how the defendants' actions have harmed or will harm the [organization]" or a particular member do not support standing. *Ouachita Watch League v. U.S. Forest Serv.*, 858 F.3d 539, 543 (8th Cir. 2017).

Typically, an organization seeking to establish standing on behalf of its membership must demonstrate that one or more of its members have personally suffered or will face harm through specific averments or proof. *See Summers*, 555 U.S. at 498-99. However, an organization need not identify a specific member who will suffer harm "where *all* the members of the organization are affected by the challenged activity." *Id.*; *see also Ouachita*, 858 F.3d at 543-44. Where the members' "status and interests are . . . diverse and the possibilities of conflict . . . obvious," the organization may not be "an appropriate vehicle to litigate the claims of its members." *See Associated Gen. Contractors of N.D. v. Otter Tail Power Co.*, 611 F.2d 684, 691 (8th Cir. 1979). Similarly, associational standing may be improper where the association asserts "damages claims [which] are not common to the entire membership, nor shared by all in equal degree." *Warth*, 422 U.S. at 515.

The Commissioner argues that Plaintiffs lack standing to assert their claims, mandating dismissal of this case. First, the Commissioner contends that Plaintiffs fail to allege any direct, concrete, or particularized injury to support standing on their own behalf. According to the Commissioner, "Plaintiffs provide no argument . . . to show that any of the Commissioner's alleged conduct has had any impact on Plaintiffs' operations, let alone caused Plaintiffs any financial harm or invaded any of Plaintiffs' legally protected interests." (Doc. No. 30 at 2.) Second, the Commissioner asserts that Plaintiffs fail to establish associational standing to sue on behalf of their members. In particular, the Commissioner contends that Plaintiffs' claims seeking monetary relief would require the participation of the organizations' individual members because Plaintiffs have not demonstrated that all of their members have suffered equal damages. Furthermore, the Commissioner argues, "Plaintiffs plead no facts to show that the injunctive relief they seek will benefit all of their members, let alone that all of their members have a uniform interest in moving the administration of non-emergency medical transportation services from the individual counties to [DHS]." (*Id.* at 3.)

Plaintiffs dispute both of these arguments. First, Plaintiffs allege that they have standing because they were injured following an NEMT Advisory Committee meeting in which attendees voted to delegate DHS's NEMT administration duties to the counties. Plaintiffs also assert that the Commissioner's breaches of state and federal law and the resulting inconsistent administration of NEMT have caused them further injury. Second, concerning associational standing, Plaintiffs argue that they also have standing to sue on behalf of their membership. In particular, Plaintiffs point to the Eighth Circuit's decision

13

in *Arkansas Medical Society v. Reynolds*, 6 F.3d 519 (8th Cir. 1993), which they contend found standing in analogous circumstances. Plaintiffs dispute the Commissioner's argument that they are seeking damages in the form of previously recouped payments. Rather, Plaintiffs argue, "[t]he money damages sought are those that Plaintiffs and their members will continue to suffer if Defendant Piper continues to violate the law." (Doc. No. 25 at 9.) Nevertheless, Plaintiffs emphasize that their suit primarily focuses on prospective relief instead of monetary damages.

The Court concludes that Plaintiffs' Amended Complaint is subject to dismissal because Plaintiffs have failed to establish standing on their own behalf or associational standing on behalf of their members. With respect to Plaintiffs' own standing, even construing the Amended Complaint's allegations in a favorable light, Plaintiffs have not met their burden because they have not alleged the requisite injury-in-fact element with sufficient specificity. Plaintiffs' alleged harms relating to their participation at the attempted NEMT Advisory Committee meeting are conclusory, and Plaintiffs have not pointed to specific facts to illustrate how any improprieties regarding the meeting resulted in concrete and particularized harm to their organizations. Plaintiffs also fail to clearly allege how the inconsistent administration of NEMT has resulted in harm to either R-80 or MAA as organizations, separate from any harm that may be felt by their individual members.

Turning to associational standing, the Court similarly finds Plaintiffs' Amended Complaint insufficient to invoke the Court's jurisdiction. With respect to the injunctive relief they seek, Plaintiffs' allegations lack the necessary facts to demonstrate that

14

Plaintiffs' members have suffered concrete harm to a legally protected interest. At most, Plaintiffs' allegations support that the inconsistent administration of NEMT throughout Minnesota has led some of Plaintiffs' members to make the business decision to discontinue services in particular counties, that some members have experienced delays in reimbursement for services provided, and that confusion over the responsible county has left some claims uncollected. These economic harms, however, are supported by only conclusory allegations and generalized claims.[4] It is also questionable whether these alleged harms have a sufficiently direct connection to the Commissioner's alleged conduct to support the causation and redressability elements of standing.

Furthermore, Plaintiffs have failed to demonstrate that their members' alleged damages (whether for past harm or future harm yet to be incurred), are sufficiently cohesive such that associational standing is appropriate to vindicate their rights.[5]

---

[4] While the Affidavit of Jeffrey Nustad provides some more specific factual support for the economic harm faced by NEMT providers, Nustad merely offers the general allegation that the Commissioner's conduct "has had a substantial impact on [his] business," and that he has discontinued services in two counties. (Doc. No. 26 ("Nustad Aff.") ¶¶ 5, 8.) This fails, however, to clearly establish concrete harm to support standing. Nustad does not aver, for example, that he has not been reimbursed for services provided or that his company has incurred particular costs as a result of the inconsistent administration of NEMT throughout the state. Furthermore, even if any of Nustad's allegations would be sufficient to support standing on behalf of R-80, the record does not contain anything to demonstrate that Nustad's company is also a member of MAA. His affidavit, therefore, only impacts the standing analysis with respect to R-80.

[5] The Court notes that it does not find Plaintiffs' reliance on *Arkansas Medical Society v. Reynolds*, 6 F.3d 519 (8th Cir. 1993), to be persuasive on the standing issue. In *Reynolds*, the Eighth Circuit found that professional associations had standing to assert the Medicaid Act claims of their provider members. *See id.* at 528. With respect to whether the individual members would have standing, the court merely stated that

(Footnote Continued on Next Page)

15

Specifically, Plaintiffs' allegations with respect to improperly recouped reimbursements and threatened fraud investigations are necessarily limited to only certain providers who have suffered these particular harms.

For the foregoing reasons, the Court determines that Plaintiffs lack standing and this Court therefore lacks jurisdiction to consider their claims. Thus, the Court shall grant the Commissioner's Motion to Dismiss and dismiss Plaintiffs' Amended Complaint in its entirety. Although the Secretary did not separately raise a standing challenge in his Motion to Dismiss, the Court lacks jurisdiction to address the merits of his separate arguments for dismissal, and the dismissal of Plaintiffs' Amended Complaint renders his arguments for dismissal moot.[6]

---

(Footnote Continued From Previous Page)
"Medicaid . . . providers individually have standing to contest the Medicaid laws." *Id.* (citing *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 509 (1990)). The authority supporting this general proposition, however, has been significantly undermined by more recent cases decided by the Supreme Court and the Eighth Circuit. *See Does v. Gillespie*, 867 F.3d 1034, 1039-40 (8th Cir. 2017) (discussing *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378 (2015), and *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)). The *Reynolds* decision also preceded the Supreme Court's clarification in *Spokeo* that "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

[6] Notably, even if the Court determined that it had standing, it appears that Plaintiffs' claims are nonetheless subject to dismissal for additional reasons. Specifically, the Eleventh Amendment precludes this Court from adjudicating official-capacity claims against the Commissioner seeking damages or arising under Minnesota law (Counts III, IV, VIII, IX, X, XI, XII, XIII, XIV). *See Minn. Pharmacists Ass'n v. Pawlenty*, 690 F. Supp. 2d 809, 815 (D. Minn. 2010) (citing *Ex Parte Young*, 209 U.S. 123 (1908), and *Pennhurst State Sch. & Hosp.*, 465 U.S. 89, 105-06 (1984)). In addition, Plaintiffs' Medicaid Act claims lack merit based on the lack of a private right of action under 42 U.S.C. § 1983 to enforce the Medicaid provisions at issue. (Counts I, II, V, VI, and VII). *See id.* at 818-24 (finding no private right of action under 42 U.S.C.

(Footnote Continued on Next Page)

# ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Defendant Emily Johnson Piper's Motion to Dismiss (Doc. No. [15]) is **GRANTED**.

2. Defendant Don Wright's Motion to Dismiss (Doc. No. [20]) is **DENIED AS MOOT**.

3. Plaintiffs' Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: August 29, 2018           s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge

---

(Footnote Continued From Previous Page)
§ 1396a(a)(30)); *Jordano By & Through Jordano v. Steffen*, 787 F. Supp. 886, 891-93 (D. Minn. 1992) (concluding 42 U.S.C. § 1396a(a)(19) does not create an enforceable right); *see also Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (holding that regulations may not create a private right of action not otherwise created by statute).